UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNIL BALDEOSINGH,

    Plaintiff,

v.                                                    Case No. 8: 20-cv-925-WFJ-JSS

TRANSUNION, LLC;

    Defendant.
_____/

## ORDER GRANTING TRANSUNION'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Sunil Baldeosingh filed this action alleging that Defendant TransUnion violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. Dkt. 1. TransUnion now moves for judgment on the pleadings. Dkt. 35. Having considered the parties' submissions, including Plaintiff's response, Dkt. 42, and TransUnion's reply, Dkt. 45, the Court grants TransUnion's motion. In brief, Plaintiff has failed to assert that any information TransUnion included in his credit report was factually inaccurate as required to state a claim under the FCRA. Rather, Plaintiff's suit implicitly challenges the legal validity of a reported debt, something TransUnion is not required to resolve.

## I. BACKGROUND

This action arises from an account Plaintiff opened with RAC Acceptance East, LLC d/b/a AcceptanceNOW East, LLC ("RAC"). RAC partners with retailers across the country to provide appliances and other household goods to consumers on a lease-to-own basis. Plaintiff opened an account with RAC in March 2017 to finance an appliance purchase. Dkt. 1 ¶ 20; Dkt. 42-1. The account eventually went into collections. Dkt. 42-1. In turn, TransUnion reported the RAC account in Plaintiff's credit file as "closed" as of December 2017 and "charged off as bad debt" with a final outstanding balance of $3,576. Dkt. 42-2.

On September 5, 2019, Plaintiff sent a dispute letter to TransUnion to contest the RAC account. Dkt. 42-1 ("Dispute Letter").[1] In the letter, Plaintiff asked TransUnion to remove the account from his credit file because he "d[id] not owe this money." He then explained in detail why he believed this was the case.

According to Plaintiff, the alleged debt stemmed from RAC's failure to fulfill an appliance purchase. *Id.*; Dkt. 1 ¶ 20. Plaintiff had opened an account with RAC to finance the purchase of a washer-dryer set from an appliance retailer. At the time of purchase, Plaintiff paid $170 down and took the washer home, and the

---

[1] The parties have attached copies of the Dispute Letter to their respective filings. *See* Dkt. 35-1; Dkt. 42-1. They agree the Dispute Letter is central to Plaintiff's claims and do not dispute its authenticity. Dkt. 35 at 3–4; Dkt. 42 at 2 n.1. The Dispute Letter is therefore incorporated by reference in the Complaint, and the Court will consider its contents. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

retailer promised to deliver the dryer once it was in stock. Dkt. 42-1. A month later, the retailer informed Plaintiff he would receive a dryer, but not one to match the washer. Dkt. 1 ¶ 21; Dkt. 42-1. Plaintiff refused to accept a substitute dryer and asked to return the washer because he had signed a contract for a matching washer-dryer set. Dkt. 42-1. The retailer told Plaintiff that RAC would contact him to resolve the issue. *Id.*

The next week another one of RAC's retail partners contacted Plaintiff. *Id.* Plaintiff again asked to return the washer and for a refund of his down payment. *Id.* The retailer at first refused, stating Plaintiff needed to make three payments before he could return any merchandise, but eventually agreed to process a refund and promised to send someone to pick up the washer. *Id.*; *see* Dkt. 1 ¶ 22. Plaintiff made several attempts to arrange a pickup, but no one ever came, no refund issued, and the account went into collections. Dkt. 1 ¶ 23; Dkt. 42-1. Plaintiff closed his Dispute Letter by asking TransUnion to investigate the matter and to delete the RAC account from his credit file as soon as possible. Dkt. 42-1.

After receiving Plaintiff's letter, TransUnion sent a request to RAC to investigate the matter. Dkt. 1 ¶ 26. According to Plaintiff, RAC responded to the request and reaffirmed the information being reported for Plaintiff's account was

accurate. Dkt. 42 at 4; *see* Dkt. 1 ¶ 29. TransUnion continued reporting the account as past due, and Plaintiff filed this lawsuit.[2] Dkt. 1 ¶¶ 30–31.

Plaintiff's Complaint alleges that TransUnion willfully and negligently violated the FCRA. Plaintiff asserts that TransUnion failed to take reasonable steps to assure the accuracy of the information it reported in his credit file as required by 15 U.S.C. § 1681e(b) and failed to conduct a reasonable reinvestigation of the disputed RAC account information and to delete the information once it was found to be inaccurate as required by 15 U.S.C. § 1681i(a). *See id.* ¶¶ 62–75. Because of TransUnion's inaccurate reporting, Plaintiff claims his credit score decreased and that he has suffered "emotional pain" and "embarrassment" associated with credit denial. *Id.* ¶¶ 33, 66, 73. Plaintiff seeks damages, costs, and attorney's fees. *Id.* ¶¶ 68, 75.

TransUnion has answered the Complaint, Dkt. 17, and now moves for judgment on the pleadings, Dkt. 35.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay

---

[2] Plaintiff also sued Equifax Information Services, LLC, Experian Information Solutions, Inc., and RAC for alleged violations of the FCRA. Plaintiff agreed to dismiss his claims against Equifax and Experian, Dkts. 30, 40 & 41, and the Court compelled the claims against RAC to arbitration, Dkt. 23.

4

trial." Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). When reviewing the motion, a court must consider the entire pleadings: the complaint, the answer, documents attached as exhibits, and documents incorporated by reference. *See Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1319 (S.D. Fla. 2014). At the same time, the Court must accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Cunningham v. Dist. Att'y's Off. for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010).

### III. DISCUSSION

TransUnion argues it is entitled to judgment in its favor because Plaintiff has not alleged that his credit report contained a factual inaccuracy as the FCRA requires to state a claim. Rather, in TransUnion's view, Plaintiff has asserted what amounts to a legal challenge to the validity of the reported debt—really a contractual dispute—which is not a basis for relief under the Act. The Court agrees.

### A. Claims under §§ 1681e(b) and 1681i(a) require a plaintiff to allege the credit report contained factually inaccurate information.

The FCRA seeks to ensure "fair and accurate credit reporting." 15 U.S.C. § 1681(a)(1). To establish a prima facie violation of either § 1681e(b) or § 1681i(a),

5

a consumer must allege that a CRA prepared a report containing inaccurate information. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156, 1160–61 (11th Cir. 1991); *Batterman v. BR Carroll Glenridge, LLC*, 829 F. App'x 478, 481 (11th Cir. 2020) (per curiam). If a plaintiff does not allege that his credit report contained an inaccuracy, he has, as a matter of law, failed to establish a violation of the Act. *See Cahlin*, 936 F.2d at 1156; *Batterman*, 829 F. App'x at 481.

The Eleventh Circuit and other circuit courts have held that the alleged inaccuracy must be a factual one. *See Cahlin*, 936 F.2d at 1160; *Batterman*, 829 F. App'x at 481–82; *Denan v. TransUnion LLC*, 959 F.3d 290, 296 (7th Cir. 2020); *DeAndrade v. TransUnion LLC*, 523 F.3d 61, 66–68 (1st Cir. 2008). In essence, there must be a patent inaccuracy in the report. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). Examples include inaccuracies in an account balance, *see Batterman*, 829 F. App'x at 481–82, tradeline items not immediately removed once a debt is vacated, inaccurately updated loan terms, *Juarez v. Experian Info. Sols., Inc.*, No. 19 C 7705, 2020 WL 5201798, at *3 (N.D. Ill. Aug. 31, 2020), or when the consumer denies having opened an account, *see Salem v. Legal Liaison Serv.*, No. 16-CV-3927, 2019 WL 1057371, at *3 (N.D. Ill. Mar. 6, 2019).

A consumer fails to establish a factual inaccuracy in a CRA's reporting, however, by merely asserting a challenge to the legal validity of a reported debt. *See Denan*, 959 F.3d at 295–96; *Carvalho*, 629 F.3d at 891–92; *DeAndrade*, 523 F.3d at 68. This is because CRAs are not legal tribunals; they simply collect and report information provided by others. *Carvalho*, 629 F.3d at 891. Determining a debt's validity and whether a consumer has a valid defense to a debt are "question[s] for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA." *Id.* at 892; *Denan*, 959 F.3d at 296; *DeAndrade*, 523 F.3d at 68; *accord Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015); *Batterman*, 829 F. App'x at 481–82. Thus, a CRA need not delete a disputed item from a consumer's credit file simply because the consumer raises an unadjudicated defense to the debt. *See Carvalho*, 629 F.3d at 892.

In this vein, CRAs are not required to resolve contractual disputes. *See id.* at 891. As the Eleventh Circuit recently held in *Batterman*, a consumer does not allege a factual inaccuracy in an agency's reporting by asserting what amounts to a contractual dispute with a creditor. *See* 829 F. App'x at 481–82. In that case, two credit agencies reported that Batterman had a delinquent debt for failing to pay liquidated damages under a lease agreement. *Id.* at 479. Batterman asked the agencies to remove the debt from his credit report, claiming he did not owe the

purported liquidated damages because the lease authorized early termination if the apartment became uninhabitable, which he claimed had occurred. *Id.* at 479, 481. Batterman sued the agencies under the FCRA when they refused to remove the debt from his credit file. *Id.* at 479–80. The Eleventh Circuit ultimately upheld a grant of judgment on the pleadings for the agencies. *Id.* at 482. The court found that Batterman had not alleged a factual inaccuracy in the agencies' reporting because he did not say the debt was inaccurate as to the amount. *Id.* at 481. Instead, his claim was that he did not owe the debt at all—a claim that rested on his interpretation that he had lawfully terminated the lease because his apartment was uninhabitable. *Id.* This raised a contractual dispute that hinged on the interpretation of the lease agreement and the parties' rights under it— issues for a court to resolve, not a credit reporting agency. *Id.*

### B. Plaintiff does not allege that his credit report contained a factual inaccuracy.

Plaintiff's claims fail because his dispute centers on the validity of the debt and not a factual inaccuracy in the information appearing on his credit report. Plaintiff states that the reported debt resulted from RAC's failure to fulfill the appliance purchase. Dkt. 1 ¶¶ 20–24. He does not claim the dates for the RAC account were inaccurate or that the dollar amount of the balance was too high. In his Dispute Letter and response to the present motion, Plaintiff stresses that the RAC account was inaccurately reported as past due because, like the plaintiff in

8

*Batterman*, he does not owe the debt at all. Dkt. 42 at 3, 11–13; Dkt. 42-1. In Plaintiff's view, RAC rescinded the sale agreement when it failed to provide a matching dryer as the agreement required. As a result of RAC's failure to comply with the agreement, Plaintiff believed he was entitled to return the washer and receive a refund of his down payment and believed he was no longer obligated to pay the outstanding balance.[3]

Accepting this as Plaintiff's position, the inaccuracy he claims, like the one claimed in *Batterman*, is really an unresolved contract dispute with the creditor, RAC. To delete the RAC tradeline from Plaintiff's credit file as he requested, TransUnion needed to: (1) review the terms of the sale agreement; (2) determine the parties' performance obligations; and (3) decide whether RAC complied with the agreement by offering a comparable dryer or whether failure to provide a

---

[3] At one point in the Complaint, Plaintiff states that the reported RAC tradeline is inaccurate because "this account does not belong to [him], and in the event it is his account, the balance is definitely incorrect." Dkt. 1 ¶ 18. But elsewhere in the Complaint, the Dispute Letter, and his response, Plaintiff admits the RAC account belonged to him and never suggests that the reported account balance was too high. Dkt. 1 ¶¶ 20–24; Dkt. 42 at 2–4; Dkt. 42-1. Plaintiff's actual position is that the debt was inaccurate and did not belong to him in the sense that he owed nothing to RAC after it failed to honor the sale agreement. Dkt. 42 at 3, 11–13; Dkt. 42-1. Plaintiff reiterates this is his position throughout the Dispute Letter and his response. *Id.* As Plaintiff is the master of the Complaint, the Court will defer to his interpretation of his own allegations. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1040 (9th Cir. 2003) (deferring to Plaintiff's interpretation of a complaint that was "the exact opposite of a model of clarity" because the complaint "c[ould] be read in the way [Plaintiff] assert[ed]"); *E. States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 393 (S.D.N.Y. 1998) ("[T]he principle that the plaintiff is master of the complaint also counsels in favor of construction in accordance with the representations of the plaintiffs.").

matching dryer warranted rescission of the contract. There is also the fact that, according to the Dispute Letter, Plaintiff remains in possession of the washing machine. So TransUnion also needed to determine what effect this might have had on the contract and the status of the debt. At bottom, this case presents the exact type of contractual dispute that courts, including the Eleventh Circuit, have found CRAs are ill-suited, and not required, to resolve. *See Batterman*, 829 F. App'x at 481–82; *Carvalho*, 629 F.3d at 891.

Plaintiff unsuccessfully tries to distinguish his case from those involving impermissible collateral attacks on a reported debt. Cases like *Carvalho* or *Batterman*, Plaintiff contends, required credit reporting agencies to make sophisticated and complex legal judgments, while this case does not. Dkt. 42 at 9–13. All TransUnion needed to do here, Plaintiff suggests, was examine the facts he had presented in order to determine one question: "whether Plaintiff owed the balance of the account for [RAC]'s failure to honor the agreement." *Id.* at 12. Though maybe not overly complex, this is still a question of contract law for a court to resolve.

In short, Plaintiff's dispute here is with the creditor. He needs to address the reported debt in a direct action against RAC, obtain a judgment invalidating the debt, and then report the judgment to TransUnion. If at that point TransUnion

continues to report the debt, Plaintiff may then have a claim under the FCRA.[4] *See DeAndrade*, 523 F.3d at 68. But as of now, Plaintiff's objection to the RAC tradeline is a legal one, not a factual one.[5]

## IV. CONCLUSION

Plaintiff has not alleged that his credit report contained inaccurate information. Thus, he cannot state a claim under §§1681e(b) or 1681i(a). Defendant's Motion for Judgment on the Pleadings (Dkt. 35) is therefore granted, and the clerk is directed to enter judgment for TransUnion.

**DONE AND ORDERED** at Tampa, Florida on March 31, 2021.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

---

[4] It is also worth noting that in cases like this the FCRA provides consumers with an alternative remedy. Section 1681i(b)–(c) allows consumers to submit a brief statement explaining their side of the dispute to be included in their credit report. *See Cahlin*, 936 F.2d at 1160 n.23. It is not clear whether Plaintiff has exercised this option.

[5] Because Plaintiff has failed to allege a prima facie violation of the statute, it follows that he has also failed to establish a willful violation.